LAW OFFICE OF FRANCIS J. FLYNN, JR.
Francis J. Flynn, Jr.
422 South Curson Avenue
Los Angeles, California 90036-3169
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

*Attorneys for Plaintiff and the Proposed Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES OF AMERICA**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

|  |  |
|---|---|
| TYLER VEASEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRICOPIAN, INC. f/k/a TRICOPIAN, LLC d/b/a SAVEME PRODUCTS and SAVEME BATTERIES NORTH AMERICA, and TRICOPIAN (SWITZERLAND) SÀRL<br><br>Defendants. | Case No.: **'19CV2060 BEN JLB**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.***<br>**(3) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.**<br>**(4) FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.***<br><br><u>**JURY TRIAL DEMANDED**</u> |

COMES NOW Plaintiff Tyler Veasey (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby bring Plaintiff's

1

Class Action Complaint against TRICOPIAN, INC. f/k/a TRICOPIAN, LLC d/b/a SAVEME PRODUCTS and SAVEME BATTERIES NORTH AMERICA and TRICOPIAN (SWITZERLAND) SÀRL (hereinafter collectively referred to as "Defendants" or "Tricopian", alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

## I.    INTRODUCTION

1.    Expressly disclaiming any and all damages under the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq*., this class action seeks compensatory damages, restitution, disgorgement of profits, costs of suit, actual damages, attorneys' fees, costs, declaratory judgment, injunctive relief, and any other relief that this Court deems just and proper arising from Defendants' breach of contract, and unfair, unlawful, unethical, fraudulent, misleading, unconscionable, and/or deceptive business policies and practices related to Defendants' manufacturing, advertising, marketing, and/or sales of their FuelRod product and related service.

2.    This case stems from Defendants' practice of selling their portable charging product and service to Plaintiff and consumers, and then unilaterally making such a fundamental change in the nature of its support of the product as to deprive consumers of the primary benefit of the bargain. Specifically, Defendants' service was long based upon the notion that you pay for their portable charger once, and could thereafter exchange it when it was depleted for free and get a fully charged replacement charger. The "Free Unlimited Swaps" was an integral part of the marketing message, and was the primary benefit of the product as compared to other portable chargers, which are cheaper, have higher capacity, and faster charging speed.

3.    At some unknown time but upon information and belief around the beginning of 2019, however, Defendants began charging their users to swap their chargers for a new one. This

COMPLAINT
Case No.:

is a fundamental change in the nature of the service provided, and results in Plaintiff and the class owning a far less desirable product that they would not have purchased, or would have only purchased at a lower price.

## II.    PARTIES

### A.    Plaintiff

4.    Plaintiff Gabriel Veasey is a citizen of the State of Florida, residing in Sarasota, Florida.  Plaintiff purchased a FuelRod at Walt Disney World in Lake Buena Vista, Florida at a kiosk whose labeling reflected that the purchase entitled the user to "Free Unlimited Swapping."

5.    Plaintiff is no longer able to use his FuelRod as originally intended, or consistent with the terms of his purchase, and has been damaged thereby.  Without the ability to swap the FuelRod out for free, the device and service have little or no value.

### B.    Defendants

6.    TRICOPIAN, INC., formerly known as Tricopian, LLC, is a Delaware corporation licensed to do business in the State of California and doing business as SaveME Batteries North America and/or SaveMe Products. Upon information and belief, Tricopian, Inc. is the North American subsidiary and/or division of Tricopian (Switzerland) Sàrl. It is in the business of, among other things, developing, manufacturing, marketing and selling the FuelRod product and related services in North America.  It maintains its headquarters and an agent for the service of process at 2683 Via De La Valle – G228, Del Mar, California.

7.    TRICOPIAN (SWITZERLAND) SÀRL is a Swiss corporation registered in the country of Switzerland to do business, and is doing business as SaveMe Batteries Switzerland and/or SaveMe Products. It is, upon information and belief, the parent company of TRICOPIAN, INC. It is in the business of, among other things, developing, manufacturing, marketing and selling the FuelRod product and related services worldwide.  It maintains its headquarters and

COMPLAINT
Case No.:

agent for the service of process at Rue de la Treille 51, 2004 Neuchâtel 4, Switzerland.

## III.    JURISDICTION & VENUE

8.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (a) the aggregated claims of the putative members of the Classes exceed $5 million, exclusive of interest and costs; (b) there are at least 100 members of the putative Classes; and (c) at least one of the members of each of the proposed Classes is a citizen of a different state than Defendants.

9.    This Court has personal jurisdiction over Defendants because Defendants, directly or through their agents, have transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of California such that it reasonably anticipated being subject to personal jurisdiction in this State.  Defendants have advertised, marketed, and/or sold its FuelRods in California, including in this District.  Defendants have sufficient minimum contacts with this State, and/or sufficiently availed itself to the markets of this State through its advertising, marketing, and sale within this State to render the exercise of jurisdiction by this Court permissible.  Further, this Court has personal jurisdiction over Defendants because they maintains their North American headquarters and otherwise conduct substantial business within this District.  Defendants conduct business throughout the United States, including this District.

10.    Venue is proper in this Court because one or more Defendants does business and maintains its headquarters in this District.

## IV.    GENERAL FACTUAL ALLEGATIONS

### Defendants Portable Charger Product and Service

11.    Defendants offer a service whereby they sell portable chargers at self-service kiosks in airports, zoos, hotels, theme parks, and other locations frequented by travelers and

COMPLAINT
Case No.:

tourists worldwide to use for charging mobile phones, tablets, and other devices that can be powered or charged via USB.

12.    For years, Defendants has marketed their service as a way to pay once in exchange for an unlimited stream of on-the-go charging. For a one-time fee of $20-$30,[1] the consumer receives a small portable charger that can be used to charge mobile phones, tablets, and anything else that can be powered via USB power.  When the charger is depleted, the consumer may take it back to any FuelRod kiosk and exchange it for a fresh, fully-charged charger.

13.    The ability to swap the unit for free provides for an unlimited stream of on-demand power without the need to recharge the device was the distinguishing feature of the FuelRod service as compared to simply purchasing a portable charger.  "Unlimited Free Swaps" and "Unlimited Swapping FREE!" were prominently featured on the signage marketing the devices and service.

## FuelRods Are Sold At a Significant Premium
## Despite Subpar Performance and Specifications

14.    A comparison of Defendants' devices and other, non-swappable chargers highlights the significant premium paid by consumers over and above the cost of the charger itself.

15.    Portable charger performance is defined primarily by two specifications: capacity and charging speed. A portable charger's usefulness is in part a function of its ability to quickly deliver a charge to other devices.

16.    Capacity is measured in milli-Ampere-hours (mAh). The higher the mAh capacity, the more charge a portable charger can hold, and in turn deliver to a product.

17.    Most current generation mobile phones have internal batteries between 2700 mAh

---

[1] The initial purchase price may vary depending upon location.

COMPLAINT
Case No.:

and 3300 mAh. For example, an iPhone X has a 2716 mAh battery, and a Samsung Galaxy S9 Plus has a 3500 mAh battery.

18.    Portable chargers are likewise rated in terms of their mAh capacity. Theoretically, a portable charger rated at 3500 mAh would be able to fully charge a Galaxy s9 Plus one time before it needed to be recharged. Most commercially available portable chargers are rated at 10,000 mAh or higher and are accordingly capable of fully charging a phone 3 or more times on a single charge.

19.    In this respect, Defendants' chargers fall short of the norm. They are rated at only 2600 mAh, meaning that they are unable to even deliver a single complete charge to a modern generation smartphone.

20.    The other important criteria is charging speed, which for the purposes of portable chargers is measured in amps (A). Generally speaking, the higher the amp rating, the faster the charge is delivered.

21.    In addition to the convenience factor associated with a faster charge, however, a lower amp rating can have other negative consequences. For example, it may not be able to a charge some devices that are in use fast enough to counter the ongoing battery drain or to provide a meaningful, useful charge, and may not be able to charge some larger devices, like certain tablets, at all.

22.    Portable chargers are typically rated between 1 A and 2.4 A on a per device basis, and some chargers have higher amp ratings that allow for the charging of multiple devices at once. As is the case with capacity, Defendants' chargers come in on the low end of the spectrum, charging a single device at only 1 A.

**The Primary Value Associated With FuelRod is the Ability to Swap Out The Chargers for Free Rather Than Manually Recharging Them**

COMPLAINT
Case No.:

23. Portable 2600 mAh, 1 A chargers like those offered by Defendants are available for purchase for a fraction of the amount charged by Defendants for their chargers, often costing less than $10. Comparable chargers are also frequently provided as free promotional items.

24. So, with the chargers themselves being undersized and underpowered as compared to their price tag, why would someone pay $30 for this device? The answer is that they are not simply paying for the device, they are paying for the service that accompanies it.

25. Defendants' primary marketing push with respect to the FuelRod has long been the ability to swap the device for free for a fresh one rather than needing to plug it in to recharge it like a traditional portable charger. Signage on Defendants' legacy machines bear this out:

COMPLAINT
Case No.:



26.     As is apparent from the verbiage on the kiosks, Defendants boldly and conspicuously marketed "Unlimited Free Swaps" and "Unlimited Swapping FREE!," (emphasis in original) as one of the primary reasons to buy the device.

27.     As originally conceived, Defendants' service provides an essentially endless supply of portable power provided the user is near a kiosk. Even though the charger will deplete prior to delivering a full charge and charges quite slowly, this inconvenience is offset by the fact

8

that the user can simply obtain a fresh charger for free and continue charging as needed.

28.     Accordingly, the price of the device is intended to cover not just the cost of the charger itself, it also essentially includes prepayment for future swaps of the charger and the ability to get an essentially endless stream of portable power.

29.     Implicit in the purchase price and sales transaction is the ongoing right to take advantage of Defendants' swapping service, for free, on an unlimited basis, as represented on the kiosk at the time of purchase.

**Defendants Change The Deal**

30.     At a time currently unknown to Plaintiff but believed to be approximately January 2019, Defendants abruptly changed their policy with respect to swapping its FuelRods. Specifically, rather than allowing for the unit to be swapped out for a fresh one for free (consistent with its long-standing marketing message, practice and policy), they began charging consumers to swap out for a fresh charger.

31.     In many instances, however, Defendants have not changed the signage on their kiosks, which still reflected that the devices can be swapped out for free. This photo of a FuelRod kiosk at Epcot at Walt Disney World was taken on April 5, 2019 and is demonstrative:

COMPLAINT
Case No.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



32.     Thereafter, in September 2019, kiosks at Walt Disney World began using different signage that no longer promised free unlimited swaps, instead simply referring to them as "swappable." This photo from a September blog post on WDW News Today is demonstrative of the change in signage:[2]

---

[2] See https://wdwnt.com/2019/09/photos-fuelrod-kiosks-changed-to-remove-free-unlimited-swapping-graphic-at-the-magic-kingdom/ (Last visited: October 25, 2019)

COMPLAINT
Case No.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



27  33.   This verbiage still failed to disclose that users would be charged to swap their

28

COMPLAINT
Case No.:

devices at other locations.  Moreover, there was a significant period of time where inaccurate, deceptive and misleading signage was used that purported to allow for free unlimited swaps, even though the device could not be swapped for free in most locations.

34.    On October 25, 2019, it was reported by various media outlets that the signage had again been changed, and that FuelRod kiosks would now be $3 to swap devices as of November 1, 2019, as reflected in this photo from Attractions Magazine's Website.[3]  This would necessarily include FuelRods that were purchased when the signage promised "Free Unlimited Swaps."



**Defendants' Contractual Language is Void and Unenforceable**

35.    Any language in Defendants' terms of service purporting to permit Defendants to so radically change the nature of its agreement with Plaintiff and the Class is void and unenforceable for one or more of the following reasons:

      a.    The terms are a pure contract of adhesion that is only available after the sales transaction is complete;

      b.    The terms and conditions are not provided to the consumer at all in conjunction with the purchase, nor are they readily available on the FuelRod website;

      c.    Defendants have breached the covenant of good faith and fair dealing in making unilateral amendments to the terms;

      d.    Defendants have breached the implied covenant to assure that the promises of a contract remain effective and are in accordance with the parties' legitimate expectations;

      e.    Defendants' attempts to unilaterally and fundamentally alter to agreement from free swaps to charging for swaps is objectively unreasonable under the circumstances under applicable law;

      f.    Defendants failed to substantially follow their own procedures and policies for changing the terms of the agreement and/or was in breach of the agreement; and,

      g.    Defendants' attempts to unilaterally and fundamentally alter to agreement from free swaps to charging for swaps would frustrate the core purpose of the parties' agreement.

## VI.    CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action and seek to certify and maintain it as a class action under

13

Fed. R. Civ. P. 23, individually and on behalf of the following Class:

**The Class (the "Class")**

> All individuals and entities in the United States who purchased a FuelRod from a kiosk within the applicable statutes of limitations preceding the filing of this lawsuit that contained signage indicating "Free Unlimited Swapping," "Unlimited Free Swaps," or like verbiage.

37.     Excluded from the Class are: (a) Defendants and any entities in which Defendants have a controlling interest; (b) Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants; (c) All current employees of Defendants; (d)  The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

38.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

39.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), and all requirements therein are met for the reasons set forth herein.

40.     The claims of all Class members derive directly from a single course of conduct by the Defendants. Defendants have and continue to engage in uniform and standardized conduct toward the Class members. Defendants do not differentiates, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class members. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other persons similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority

14

COMPLAINT
Case No.:

requirements of these provisions.

41.    Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

42.    **Numerosity - Fed. R. Civ. P. 23(a)(1).** The Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the Class includes many thousands of members.  The numerosity requirement is, therefore, satisfied. Undoubtedly, individual joinder in this case is impracticable.  More than one thousand Class members is sufficient to satisfy numerosity under Fed. R. Civ. P. 23(a)(1).

43.    **Ascertainability.**  The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within their control or Plaintiff and the Class themselves.  Plaintiff anticipates providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

44.    **Commonality and Predominance - Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are several questions of law and fact common to the claims of Plaintiff and the members of the Class. All of the members of the Class' claims are based upon the same facts and circumstances. Fed. R. Civ. P. 23(a)(3). The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Class. Common questions include, but are not limited to, the following:

a.    Whether Defendants unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the terms of their product and

COMPLAINT

Case No.:

service;

b.      Whether Defendants unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Class into purchasing their portable chargers and related service;

c.      Whether Defendants unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that they intended to make a material change in the terms of its use that would fundamentally alter the nature of their product and service after purchase;

d.      Whether Defendants unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly represented that "unlimited free swaps" were available, or that the devices could otherwise be swapped an unlimited number of times for free, when it knew it had no intention of honoring that representation;

e.      Whether Defendants engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by inducing Plaintiff and the Class to purchase their product and service on terms that were knowingly misleading and inaccurate;

f.      Whether Defendants' marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

g.      Whether Defendants breached one or more terms of the contract or agreement;

h.      Whether there is an ambiguity in the terms of the contract or agreement;

i.      Whether Defendants adequately, meaningfully, conspicuously disclosed to Plaintiff and the Class that they would have to pay to swap their device in the future;

j.      Whether Defendants had a duty to disclose their intention to make a material, unilateral change in the fundamental nature of the service they provide prior to sale;

k.      Whether Defendants violated the applicable consumer protection statutes;

16

COMPLAINT

Case No.:

l.      Whether Defendants concealed material facts in their advertising materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

m.      Whether Defendants have engaged in deceptive acts or practices in connection with the sales, marketing, and/or manufacturing of the FuelRods;

n.      Whether Defendants breached one or more agreements with Plaintiff and the Class Members;

o.      Whether Defendants were unjustly enriched;

p.      Whether Defendants' agreement is unconscionable and/or contain unconscionable provisions;

q.      Expressly disclaiming damages under the CLRA, whether Plaintiff and the Class are entitled to actual, compensatory, nominal, statutory, and/or punitive damages;

r.      Whether the relationships between Defendants on one hand and the Plaintiff and the Class on the other is governed by California law;

s.      Whether Defendants violated California law; and/or

t.      Whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief.

45.      **Typicality - Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class.  The claims of the Plaintiff and the respective Class are based on the same legal theories and arise from the same unlawful and willful conduct of Defendants, resulting in the same injury to the Plaintiff and the respective Class. Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class members. Plaintiff have been damaged by the same wrongdoing set forth in this Complaint.

46.      **Adequacy - Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate Class representative

17

COMPLAINT
Case No.:

because Plaintiff has retained counsel competent and experienced in complex class action litigation; neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class;  Plaintiff is knowledgeable about the subject matter of this action and will assist counsel to vigorously prosecute this litigation and has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed.  The interests of the members of Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.  As such, Plaintiff meets the adequacy requirement.

47.   **Superiority - Fed. R. Civ. P. 23(b)(3).** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if members of the Class themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

48.   **Policies Generally Applicable to the Class - Fed. R. Civ. P. 23(b)(2)**. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct

18

with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

49.     **Injunctive and Declaratory Relief is Appropriate - Fed. R. Civ. P. 23(b)(1).** Defendants have acted, or refused to act on, grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

50.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class.

51.     The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

52.     **Certification of Particular Issues. Fed. R. Civ. P. 23(c)(4).** Issue certification is also appropriate with respect to any or all of the common issues identified herein.

## VII.     CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT /
### (On Behalf of Plaintiff and the Class)

53.     Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing allegations of this Class Action Complaint as if fully set forth herein.

54.     Plaintiff purchased a FuelRod manufactured, marketed and sold by Defendants at Walt Disney World.  Plaintiff paid a purchase price of $30 for the FuelRod.

55.     In connection with this sale, Defendants purported to create a contractual relationship with Plaintiff, as evidenced by certain written language Defendants includes in and on its signage and packaging contemporaneous with Plaintiff taking ownership of the product.

56.     Specifically, in connection with this purchase, Defendants promised provide "free

19

unlimited swaps" of its FuelRod at other FuelRod kiosk locations.

57.   Defendants breached the essential terms of their promise by charging Plaintiff and members of the Class to swap for a fresh FuelRod, as set forth herein.

58.   Plaintiff and members of the Class have devices that are not worth what they paid for them and have otherwise sustained damages as a direct and proximate result of Defendants' breach of the agreement.

59.   Defendants are jointly and severally liable for the losses of Plaintiff and the Class that have resulted from Defendants' breaches of the parties' contractual agreements.

**COUNT II**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(California Business & Professions Code §§ 17200, *et seq.*)**
**(On Behalf of Plaintiff and the Class)**

60.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

61.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

62.   Defendants' unlawful, unfair, and/or fraudulent business acts and practices, as described herein, were and are in violation of the UCL. Defendants' conduct violates the UCL in the following ways:

a.   By knowingly and intentionally concealing from Plaintiff and the other members of the Class material information concerning the FuelRod as set forth above;

b.   By violating the FTC;

c.   By breaching the terms of the Contract or other agreement;

COMPLAINT
Case No.:

d.      By violating other California laws, including Cal. Bus. & Prof. Code § 17500, *et seq.*, and Cal. Corp. Code § 25000, *et seq.* (described below); and/or

e.      Violating other statutory law.

63.     Defendants' omissions alleged herein caused Plaintiff and the other Class members to purchase the FuelRods.  Had they been aware of the information omitted by Defendants, Plaintiff and the other Class members would not have purchased the FuelRods or would have purchased them only at a reduced price.

64.     Defendants' practice is also immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits.

65.     Accordingly, Plaintiff and the Class members have suffered injury in fact, including lost money as a result of Defendants' unlawful, unfair, and fraudulent business acts and/or practices.

66.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, under Cal. Bus. & Prof. Code § 17200.

67.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

**COUNT III**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CALIFORNIA CIVIL CODE § 1750, ET SEQ.**
**(On Behalf of Plaintiff and the Class)**

68.     Plaintiff hereby restates and incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendants as if fully set forth herein.

21

COMPLAINT
Case No.:

69.    This cause of action is brought pursuant to Civil Code § 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class as defined herein.

70.    Defendants are "persons" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

71.    Plaintiff and members of the proposed Class are "consumers" within the meaning of Cal Civ. Code §§ 1761(d) and 1770.

72.    Defendants' FuelRod products are "goods" or "services" as defined by Cal. Civ. Code § 1761(a).

73.    As described above, Defendants violated the CLRA in at least the following respects:

(a)    in violation of § 1770(a)(5), by representing that their "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have";

(b)    in violation of § 1770(a)(6), by representing that Defendants' "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

(c)    in violation of § 1770(a)(9), by "advertising goods or services with intent not to sell them as advertised";

(d)    in violation of § 1770(a)(14), by "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve";

(e)    in violation of § 1770(a)(16), by "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not";

(f)    in violation of § 1770(a)(19), "by inserting an unconscionable provision in the contract"; and

22

(g)     for other such violations of the CLRA that discovery will uncover.

74.     Defendants' actions as described herein were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

75.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations and material omissions in the marketing and advertisement of the FuelRods.

76.     Defendants' unfair or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by Defendants in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

77.     As a direct and proximate result of Defendants' violations of law, Plaintiff and the Class have been injured.

78.     Plaintiff will be sending Defendants a CLRA notification and demand letter via certified mail, return receipt requested.

79.     The notice letter will set forth the relevant facts and notifies each Defendants of its CLRA violations, and request that each Defendant promptly remedy those violations.

80.     Under the CLRA, a plaintiff may, without prior notification, file a complaint alleging violations of the CLRA that seeks injunctive relief *only*. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the Plaintiff may amend his CLRA causes of action without leave of court to add claims for damages.

81.     At this time, Plaintiff expressly disclaims any and all damages under CLRA. Plaintiff, individually and on behalf of the class, will amend this complaint to add damages claims if Defendants do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

82.     Under the CLRA, Plaintiff are entitled to a permanent injunction prohibiting

practices that violate the CLRA.

83.    Defendants' practices, acts and courses of conduct in connection with the sale of their FuelRod products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendants from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

84.    Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendants with respect to Defendants' unfair acts and deceptive practices

85.    By reason of the foregoing, Defendants' unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

86.    Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demand judgment against Defendants under the CLRA for injunctive and equitable relief *only* to enjoin the practices described herein.

87.    Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

88.    Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

89.    In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

90.    Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

**COUNT IV**

COMPLAINT
Case No.:

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (California Business & Professions Code §§ 17500, *et seq.*)
### (On Behalf of Plaintiff and the Class)

91.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

92.    Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

93.    Defendants caused to be made or disseminated throughout the United States, through advertising, marketing and other publications, statements, including statements included in its general advertising and on its website that omitted material information from consumers and members of the Class.

94.    Defendants knew or should have known through the exercise of reasonable care that the omitted information was material to consumers, including Plaintiff and the other Class members.

95.    Defendants have violated Cal. Bus. & Prof. Code § 17500 because their omissions regarding the FuelRods were material and likely to deceive a reasonable consumer.

96.    Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. By purchasing the FuelRods, Plaintiff and the other Class members relied on the representations by Defendants from which Defendants omitted material information as described herein.  Had

COMPLAINT
Case No.:

Plaintiff and the other Class members been aware of the omitted information, they would not have purchased the FuelRods or would have only paid less for it. Plaintiff and other Class members bestowed a benefit upon Defendants but did not receive the benefit of their bargain.

97.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the state of California and elsewhere.

98.     Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## VIII.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.     For an order certifying the proposed class, appointing Plaintiff and Plaintiff's counsel to represent the proposed Class, appointing counsel for Plaintiff as lead counsel for the Class;

B.     An order awarding declaratory relief and temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and/or unfair business practices alleged in this Complaint;

C.     Appropriate injunctive relief;

D.     Expressly disclaiming any and all damages under Civil Code § 1750, *et seq.*, "the CLRA", for an order awarding restitution, disgorgement, actual damages, statutory damages, exemplary damages, treble damages, and punitive damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an

26

COMPLAINT
Case No.:

1   amount to be determined at trial;

2        E.     A declaration that Defendants are financially responsible for all Class notice and

3   the administration of Class relief;

4        F.     An order awarding any applicable statutory and civil penalties;

5        G.     An order requiring Defendants to pay both pre- and post-judgment interest on any

6   amounts awarded;

7        H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

8        I.     Such other or further relief as the Court may deem appropriate, just, and proper

9/10   under the circumstances.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: October 25, 2019                    LAW OFFICE OF FRANCIS J. FLYNN, JR.

/s/ Francis J. Flynn, Jr.
Francis J. Flynn, Jr.
422 South Curson Avenue
Los Angeles, California 90036-3169
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

James Rosemergy (to seek admission pro hac vice)
CAREY, DANIS & LOWE
8235 Forsyth Boulevard
Saint Louis, Missouri 63105-1643
Tele: 314-725-7700
Email: jrosemergy@careydanis.com
Email: pmaddock@careydanis.com

**ATTORNEYS   FOR   PLAINTIFF   AND   THE
PROPOSED CLASS**

27

COMPLAINT
Case No.: